AO 106 (REV 4/10) Affidavit for Search Warrant

SAUSA Sarah Finch, (312) 353-5305

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:

The Apple Inc. account tree071230@icloud.com, further described in Attachment A-1 (the "**Subject Account**")

Case No.     1:25-mc-00261

Ref. No.     25 GJ 391

Magistrate Judge BETH W. JANTZ

**FILED**

**5/6/2025**

THOMAS G. BRUTON
CLERK, U.S. DIST. COURT

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Mallary R. Gargano, a Special Agent of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A-1**

located in the Northern District of California, there is now concealed:

**See Attachment A-1, Part III**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence and instrumentalities.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 912 | Impersonation of a federal agent |

The application is based on these facts:

**See Attached Affidavit**,

Continued on the attached sheet.

s/ Mallary R. Gargano (with permission BWJ)
*Applicant's Signature*

MALLARY R. GARGANO, Special Agent
Federal Bureau of Investigation
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: May 6, 2025

*Judge's signature*

City and State: Chicago, Illinois

BETH W. JANTZ, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT    )
                                   )
NORTHERN DISTRICT OF ILLINOIS    )

## AFFIDAVIT

I, Mallary R. Gargano, being duly sworn, state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately June 2021.

2.      My duties and responsibilities as a Special Agent include conducting criminal investigations of individuals and organizations that have violated federal laws, including violations of Title 18, United States Code, Section 1028A (aggravated identity theft) and Title 18, United States Code, Section 1347 (health care fraud). I have received specialized training and participated in numerous health care fraud investigations. I have participated in the execution of multiple federal search warrants and arrests.

3.      This affidavit is made in support of an application for a warrant to search, pursuant to Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), for information associated with certain account(s) that are stored at the premises owned, maintained, controlled, or operated by Apple Inc., a free web-based electronic mail service provider located at One Apple Park Way, Cupertino, CA 95014-2084. The account to be searched is tree071230@icloud.com (the "**Subject Account**"), which is further described in the following paragraphs and in Part II of Attachment A-1. As set forth below, there is probable cause to believe that in the account, described in Part II of Attachment A, in the possession of Apple Inc., there

exists evidence and instrumentalities of violations of Title 18, United States Code, Section 912 (impersonation of a federal agent) (the "**Subject Offense**").

4. Further, this affidavit is made in support of an application for a warrant to search the tan colored iPhone cellular telephone with a clear case (the "**Subject Phone**"), further described in Attachment A-2, for evidence and instrumentalities described further in Attachment B, concerning the **Subject Offense**.

5. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence and instrumentalities of violations of the **Subject Offense**, are located in the **Subject Account** and the **Subject Phone**.

## I. BACKGROUND INFORMATION ON ICLOUD ACCOUNTS

6. Based on my training, experience, and information available from Apple's website (apple.com), I have learned the following about Apple:

a. Apple provides a free web-based email service called iCloud Mail which is available to Apple users. Users obtain an account by registering through their Apple device, such as an iPhone, iPad, iPod touch, or MAC, and creating an iCloud Mail address.

b.     Apple maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records often include account access information and email transaction information.

c.     Any email that is sent to a subscriber is stored in the subscriber's "mailbox" on Apple's servers until the subscriber deletes the email or the subscriber's mailbox exceeds the storage limits preset by Apple. If the message is not deleted by the subscriber, the account is below the maximum storage limit, and the subscriber accesses the account periodically, that message can remain on Apple's servers indefinitely.

d.     When a subscriber sends an email, it is initiated by the user, transferred via the Internet to Apple's servers, and then transmitted to its end destination. Apple's users have the option of saving a copy of the email sent. Unless the sender of the email specifically deletes the email from the Apple server, the email can remain on the system indefinitely.

e.     An Apple iCloud Mail subscriber can store files, including emails and image files, on servers maintained and/or owned by Apple.

7.     Therefore, the computers of Apple are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Apple iCloud Mail, such as account access information and transaction information. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Apple, to protect the rights of subjects of the investigation and to effectively pursue this

3

investigation, authority is sought to allow Apple to make a digital copy of the entire contents of the information subject to seizure specified in Section II of Attachment A-1. That copy will be provided to me or to any authorized federal agent. The contents will then be analyzed to identify records and information subject to seizure pursuant to Section III of Attachment A-1.

## II.    IMPERSONATION OF FEDERAL OFFICERS AND THE COURT

8.    On or about August 23, 2023, SEUNG HAN LIM, also known as NOAH IM,[1] was charged in a 14-count health care fraud indictment in the U.S. District Court for the Northern District of Illinois in Case Number 23 CR 458. The indictment alleged that LIM, a chiropractor, fraudulently obtained over $430,000 in payments from Blue Cross Blue Shield for services that were not rendered as stated on claims LIM submitted for reimbursement by Blue Cross Blue Shield. The case remains pending, and a trial is set to begin on September 22, 2025.

9.    In approximately March 2025, the Consulate General of the Republic of Korea in Chicago contacted FBI agents regarding a complaint filed in Korea by a Korean national (Individual I.P.) to the National Police in Korea. According to information and documents obtained from the Consulate General and the complaint, Individual I.P. complained that, "My nephew who is a doctor in the United States helped me pay for my son's tuition, but two years later, my nephew demanded 100,000

---

[1] During the course of the proceedings in case number 23 CR 458, LIM informed the Court that he had changed his name to Noah Im on or about August 22, 2022. *See* Case No. 23 CR 458, Dkt. 42. Former Magistrate Judge Finnegan ordered him to surrender any identification documents under the name SEUNG HAN LIM, and convert any professional documents to the name NOAH IM. *Id.*

in legal fees, saying that he was a target for illegal employment at the federal court."[2] Individual I.P. attached the chiropractic license of his nephew, LIM.

10. More specifically, according to information and documents obtained from the Consulate General and the complaint, Individual I.P. stated that he was contacted by LIM, who told Individual I.P. that a federal agency was investigating Individual I.P.'s son (Individual J.P.)'s employment with LIM's clinic. According to the information provided by the Consulate General and Individual I.P.'s complaint, Individual J.P. was previously in the United States under a student visa for school and did not have employment authorization. Since Individual J.P. was not allowed to work under his student visa, LIM told Individual I.P. that the ongoing investigation had to do with Individual J.P.'s income and how he was able to pay for his college tuition. LIM then told Individual I.P. that Individual I.P. needed to wire $44,000 to LIM so that LIM could settle the matter with the IRS to keep Individual J.P. out of legal trouble. Approximately three weeks later, Individual I.P. wired $44,000 to LIM. Further, according to the complaint, after Individual I.P. wired the money to LIM, LIM asked for additional funds of $120,000 so that an attorney could represent various witnesses before the grand jury in the case against Individual J.P.

11. According to information provided by the Korean Consulate General, in connection with his complaint, Individual I.P. attached various documents that were sent to him by his nephew to convince Individual I.P. that the investigation into

---

[2] The documents provided to the Korean Consulate General were in the Korean language. A FBI Linguist translated the complaint from Korean to English, and this affidavit relies on that rough translation.

Individual J.P. was real and required urgent action by Individual I.P. The documents, as described further below, show that LIM is in fact the nephew that Individual I.P. was referring to and show that LIM impersonated various federal officers when he convinced his uncle to send him $44,000, and tried to convince him to send another $120,000.

12.     First, Individual I.P. provided the Korean Consulate General a document titled "Medical credential page 1" followed by Korean characters, which contained the Illinois Department of Financial and Professional Regulation license of Noah Im, LIM's new name.

13.     Second, Individual I.P. attached documents purporting to be grand jury subpoenas issued in the Northern District of Illinois by the government. One of the documents, named "Subpoena to Noah Im (for records) copy.pdf," was allegedly issued to "Noah Im c/o Joshua Lowther," and was dated February 25, 2025. The other document, named "Subpoena to Lavi Patel," was allegedly issued to "Lavi Patel," and was dated March 20, 2025. According to Individual J.V., the Assistant United States Attorney who allegedly issued the subpoena, the government did not request the issuance of these subpoenas, and there is no "October 2024 Grand Jury." Based on my knowledge of the health care fraud investigation and information received from Individual J.V., I am aware that the government did, however, send subpoenas to "Seung Han Lim c/o Josh Adams" on or about July 25, 2023, through the October 2022 Grand Jury. The metadata on the document containing the alleged subpoena to

6

Noah Im indicates it was created on July 25, 2023 (when the government did in fact issue a subpoena to LIM), and modified on February 26, 2025:

| | |
|---|---|
| escription | |
| File: | Subpoena to Noah Im (for records) copy (003).pdf |
| Title: | Subpoena |
| Author: | JVajzovic |
| Subject: | |
| Keywords: | |
| Created: | 7/25/2023 1:09:23 PM |
| Modified: | 2/26/2025 2:26:13 PM |
| Application: | Acrobat PDFMaker 23 for Word |

Additional Metadata...

dvanced

14.     Based on my knowledge of the health care fraud investigation and information received from Individual J.V., I also know that in conjunction with its 2023 health care fraud investigation, the government also issued subpoenas to various family members of LIM, also using the October 2022 Grand Jury, in July and August 2023.

15.     According to the information provided by the Korean Consulate General, Individual I.P. also attached various images of emails purportedly from federal law enforcement officers, including a March 15, 2025 email from FBI Special Agent Loan Bermudez and a March 23, 2025 email from United States Department of Labor-OIG Special Agent Dana Johnson. Based on my knowledge of the health care fraud investigation, I know that Special Agent Bermudez and Special Agent Johnson were case agents on the investigation. In SA Bermudez's email, she allegedly emailed LIM's attorney that his client "Noah Im, along with his current and former

employees, is not the target of this investigation. The sole target is [Individual J.P.]". I have confirmed with SA Bermudez that she did not send this email, and that she does not have a current investigation into Individual J.P. In SA Johnson's email, he allegedly emailed LIM's attorney that the "government is prepared to file an indictment against [Individual J.P.] on April 2, 2025." I have confirmed with SA Johnson that he did not send this email and that he does not have a current investigation into Individual J.P. According to my knowledge of the investigation, I know that, as part of the health care fraud investigation, both SA Bermudez and SA Johnson communicated with various individuals associated with LIM via email during the course of their investigation.

16.    The documents provided by Individual I.P. to the Korean Consulate also included a document titled "Contract of Representation [with Korean characters]," which appears to be a contract of representation between LIM under the name "Dr. Shawn Lim" and Lowther Walker LLC (LIM's attorney in the healthcare fraud case discussed above). According to that contract, the contract included a provision that stated that "Dr. Lim will accept all billing statements at [the **Subject Account**.]"

17.    The documents also included a second contract, a document also titled "Contract of Representation [with different Korean characters]," between Lowther Walker LLC and LIM (as Dr. Noah Im) which claimed to be for the purpose of "making every reasonable effort to prevent [Individual J.P.'s] indictment, while ensuring compliance with applicable employment laws." That contract also included a provision that "Dr. Im will accept all billing statements at [the **Subject Account**.]"

8

This contract was allegedly signed by Joshua Lowther, LIM's attorney in Case 23 CR 458, on March 20, 2025.

18.     The documents also included a document named "LOAN REPAYMENT CERTIFICATION" followed by Korean characters, which appeared to be a loan repayment certification allegedly between LIM and Individual J.P., in which LIM acknowledged that Individual J.P. had fully repaid a loan previously provided by LIM in the amount of $44,031.45. The certification is signed by "Noah Im" and the metadata lists "Noah Im" as the author:



19.     According to the information provided by the Korean Consulate General, Individual I.P. also provided seven wire transfer confirmations indicating he had in fact wired the money. The wire transfers noted a beneficiary account ending in 6296. Based on financial records I have reviewed, I believe that account belongs to LIM's wife. Specifically, according to information from Bank of America, on or about March 21, 2023, an account owned by LIM and his father (Individual J.L.), with an account

number ending in 4526, wired $2,000 to the account ending in 6296, noting a beneficiary of "Individual K.L.," who is LIM's wife.[3]

20. According to the information provided by the Korean Consulate General, Individual I.P. also provided three phone numbers of his nephew. One of the phone numbers attributed to Individual I.P.'s nephew was 224-629-9923, with a contact name in Individual I.P.'s phone of "Seunghan Lim." According to information provided by Verizon, the number ending in 9923 was subscribed to by LIM's father. According to records provided by Blue Cross Blue Shield, Blue Cross Blue Shield conducted a telephonic interview with LIM at that phone number in August of 2018.

21. Individual I.P. also provided approximately 25 screenshots of text messages and emails received from LIM, which purported to be between LIM and his attorney Josh Lowther. The screenshots appear to show messages purportedly between Lowther and LIM ("Dr. Im") regarding the purported federal investigation of Individual J.P. Some of the messages are reproduced below:

---

[3] Law enforcement believes Lee is LIM's wife because, among other things, on or about May 8, 2024, Individual K.L. signed an appearance bond and appeared in court as LIM's wife during bond revocation proceedings. *See United States v. Lim,* No. 23 CR 458 (N.D. Ill.), Dkts. 45, 47.



11



12:37

Joshua Sabert Lowther

Additionally, the contract is necessary for the government to inform the grand jury that the witness will be represented by an attorney, which is why an extension is needed.

I want you to understand that this is very important. Our firm will inform the government that there is a valid reason to extend the witness's testimony, and the government must formally request the grand jury for an extension due to attorney representation.

However, if the initial deposit is not sent by the agreed-upon deadline, it would be viewed as deceiving the grand jury. This is because we would have provided the government with the expectation that we are formally representing the witness, when in fact, no payment has been made to

Text Message · SMS



7:06

Joshua Sabert Lowther

The situation remains problematic. A federal court is likely to issue an arrest warrant, which will render your cousin a potential criminal. This means he will be detained immediately upon entering the United States. Additionally, this record will likely be shared with other countries, potentially restricting his ability to travel, and increasing the risk of his arrest and extradition to the United States.

It is crucial to prevent the issuance of the indictment. Otherwise, it could have devastating consequences for his life and future.

Thank you for your advice. So obtain attorney for witness is our priority?

Certainly. If we secure legal representation for all witnesses

Text Message • SMS



22.    Individual I.P. also provided message conversations he exchanged with LIM via KakaoTalk. More specifically, Individual I.P. provided a text document of messages between him and his nephew that appeared to be extracted from KakaoTalk. Based on my training and experience, the training and experience of other law enforcement officers, open source research, and based on information

14

provided by a Korean linguist, I know that KakaoTalk is a South Korean messenger application similar to WhatsApp or Facebook Messenger that is available on mobile-device and desktop platforms.

23.    The top of the text document is pictured below:

승한 님과 카카오톡 대화
저장한 날짜 : 2025년 3월 31일 오전 1:15

A rough translation using Google Translate of those characters from Korean to English indicates that the document stated, "KakaoTalk conversation with Seunghan" and "Saved date: March 31, 2025 1:15AM."

24.    Most of the text document provided by Individual I.P. was in Korean. However, there were several apparent attachments with titles in English. Below are some of the messages provided by Individual I.P. in conjunction with the complaint to Korean authorities, which appear to include the transmission of the documents discussed above. For example:

a.    On or about February 9, 2025, "Seunghan" sent Individual I.P. via KakaoTalk a PDF titled, "Contract of Representation.pdf."

2025년 2월 9일 오전 6:50
2025년 2월 9일 오전 6:50, 승한 : 파일: Contract of Representation.pdf
2025년 2월 9일 오전 6:50, 승한 : 제 변호사 정보 보내요. 어제 계약했어요. 저 변호사비로 $50000 불 ʔ

b.    On or about February 9, 2025, "Seunghan" sent Individual I.P. via KakaoTalk a PDF titled, "Medical Credential page 1.pdf."

2025년 2월 9일 오전 11:28, 승한 : 삼촌 지금까지 한 대화내용 다 지워주세요
2025년 2월 9일 오후 1:52, 승한 : 파일: Medical credential page 1.pdf
2025년 2월 9일 오후 1:54, 승한 : 여기보면 qr 코드 있죠 이걸로 확인하면 공식 일리노이즈 면허 확인 가능해요

15

c.      On or about February 27, 2025, "Seunghan" sent Individual I.P. via KakaoTalk a PDF titled, "Subpoena to Noah Im (for Records) copy.pdf."

```
2025년 2월 27일 오전 4:49
2025년 2월 27일 오전 4:49, 승한 : 사진
2025년 2월 27일 오전 4:49, 승한 : 외숙모에게도 보낸 메세지예요.
2025년 2월 27일 오전 4:50, 승한 : 파일: Subpoena to Noah Im (for records) copy.pdf
```

d.      On or about March 12, 2025, "Seunghan" sent Individual I.P. via KakaoTalk a PDF titled, "LOAN REPAYMENT CERTIFICATION.pdf."

```
2025년 3월 12일 오후 10:02, 승한 : 파일: LOAN REPAYMENT CERTIFICATION.pdf
2025년 3월 12일 오후 10:02, 승한 : 준희가 싸인만하면 되요 가장 아래쪽에
```

e.      On or about March 21, 2025, "Seunghan" sent Individual I.P. via KakaoTalk a PDF titled, "Subpoena to Lavi Patel.pdf."

```
2025년 3월 21일 오전 9:36, 승한 : 파일: Subpoena to Lavi Patel.pdf
2025년 3월 21일 오전 9:37, 승한 : 증인중 한명은 증언 날짜 새로 나왔어요
2025년 3월 21일 오전 9:54, 승한 : 사진
```

f.      On or about March 22, 2025, "Seunghan" sent Individual I.P. via KakaoTalk a PDF titled, "Contract of Representation.pdf."

```
2025년 3월 22일 오전 11:31, 승한 : 파일: Contract of Representation.pdf
2025년 3월 22일 오전 11:31, 승한 : 변호사가 보내준 계약서예요. 읽어는 보세요.
```

25.     According to information provided by the Korean Consulate General, Individual I.P. also provided to the Korean Consulate an email sent from the **Subject Account** to "Dennis Park" at dpark591@usc.edu on or about March 22, 2025:

미국 형

2025.03.22 (토) 17:26

보낸사람

- tree071230 <tree071230@icloud.com>
-

받는사람

- Dennis Park <dpark591@usc.edu>
-

외숙모가 연락이 안되셔서 걱정되서 연락 한다
아무일 없는지 연락해주면 고맙겠다

Sent from my iPhone

26.     In the email as shown above, the user of the **Subject Account** stated in Korean something to the effect of: "I'm contacting you because I'm worried that I can't reach my aunt" and "I would appreciate it if you could contact me to see if anything is going on." According to my review of the documents provided by Individual I.P. to the Korean Consulate General, specifically receipts from the University of Southern California listing Individual J.P.'s name on them, I believe Individual J.P. was a student at the University of Southern California and that his email address was the dpark591@usc.edu address listed above.

27.     Further, based on my training and experience, the training and experience of other law enforcement officers, and my knowledge of the investigation, I believe LIM, who is Individual J.P.'s cousin, sent the email using the **Subject Account** to Individual J.P. As shown on the email forwarded to the Korean Consulate

17

General, Individual J.P., using the Dpark591@usc.edu email address then forwarded the email to Individual I.P. (his father), who was using the email address inofood@naver.com. Individual I.P. eventually forwarded the email to the Korean Consulate General.

28. Finally, according to information provided by the Korean Consulate General, Individual I.P. also provided the following screenshot of an email that was sent via KakaoTalk by "Seunghan" to Individual I.P. The email appears to be from an associate of LIM's attorney Joshua Lowther, Bingzi Hu, to the **Subject Account**, with Lowther purportedly cc'ed. The email states, "Good morning, Dr. Im. I'm writing to inform you that the government requires us to send out the contract. I'm writing to confirm what we should respond with. I believe Josh has already informed you that your cousin, [Individual J.P.], is in imminent danger of being indicted. Please respond as soon as possible.":



## III. THERE IS PROBABLE CAUSE TO BELIEVE INFORMATION RELATED TO THE SUBJECT OFFENSE WILL BE FOUND IN THE SUBJECT PHONE AND SUBJECT ACCOUNT.

29.     As described above, Individual I.P. provided the Korean Consulate General with various documents reflecting that his nephew, LIM, sent documents (including screenshots of alleged text messages and an email purportedly sent to the **Subject Account**) purportedly related to a federal investigation of Individual J.P. via a messaging application, KakaoTalk. Those documents included falsified documents allegedly from government agents and attorneys involved in LIM's charged healthcare fraud case.

30.     On or about April 17, 2025, agents with the FBI and the United States Department of Labor Office of Inspector General ("DOL-OIG") arrested LIM at his residence located at Cumberland Drive in Lincolnshire, Illinois pursuant to an arrest

19

warrant issued by Judge Valderrama in Case Number 23 CR 458. At the time of the arrest, the **Subject Phone** (pictured below) was on LIM's person:



31.     As explained above, on April 17, 2025, during the arrest of LIM for violating the conditions of his release in Case 23 CR 458, law enforcement recovered the **Subject Phone** from LIM's person. Since April 17, 2025, the above-described **Subject Phone** has been in the government's custody.

32.     Based upon my training and experience, I know that cellular phones may contain relevant evidence of the **Subject Offense**, including text messages made or received from the **Subject Phone** that are located in the memory of the **Subject Phone**, which messages may provide information regarding the identities of, and the methods and means of operation and communication used by, the participant(s) in the **Subject Offense**. Moreover, digital photographs located in the memory of the **Subject Phone** may contain images of the tools or participant(s) involved in the **Subject Offense**, and may contain images of the user of the **Subject Phone**, the user's associates (including persons involved in or knowledgeable about

the **Subject Offense**), and locations and instrumentalities used in committing the **Subject Offense**.

33.     In addition, based on my training and experience, I know that information stored within a cellular phone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored within a cell phone can indicate who has used or controlled the cell phone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, contacts lists, instant messaging logs, and text and app-based communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the cell phone at a relevant time. Further, such stored electronic data can show how and when the cell phone and its related account were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cell phone access, use, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cell phone account owner.

34.     Additionally, information stored within a cell phone may indicate the geographic location of the cell phone and user at a particular time (*e.g.*, location integrated into an image or video sent via email or text message to include both metadata and the physical location displayed in an image or video). Stored electronic

data may also provide relevant insight into the cell phone owner's state of mind as it relates to the offense under investigation. For example, information in the cell phone may indicate the owner's motive and intent to commit a crime (*e.g.*, evidence that a text message or email was fabricated from a real text message or email), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement). Unless this data is destroyed, by breaking the cell phone itself or by a program that deletes or over-writes the data contained within the cell phone, such data will remain stored within the cell phone indefinitely.

35.     Through experience as a law enforcement officer and through the experience of other law enforcement officers as conveyed to me, I have learned that individuals involved in criminal offenses commonly use cellular telephones as a means to communicate. Here, as described above, law enforcement believes that LIM communicated with his uncle, Individual I.P. over a messaging application that can be used on mobile devices. Individuals involved in criminal offenses also often store telephone numbers and names or nicknames of their associates on their telephones, and the telephones also reflect recent call history. Finally, individuals often use text messaging and digital photographs in furtherance of their criminal activity and store those items on cellular telephones.

36.     Further, based on my training and experience in other investigations, I believe that a search of email provider account contents of individuals engaged in criminal conduct often yields investigative leads relating to:

      a.     the identities and contact information of participants engaged in and witnesses to impersonation of federal agent offenses;

      b.     the timing of communications among participants and other individuals involved in impersonation of a federal agent offenses;

      c.     the methods and techniques used in the **Subject Offense**; and

      d.     information regarding the physical location of participants engaged in and witnesses to the **Subject Offense**.

37.    Because, as explained above, the **Subject Phone** is associated with LIM in this case and because there appears to have been telephonic communication and email communication using the **Subject Account** between LIM and others regarding the **Subject Offense**, there is probable cause to believe the **Subject Account**, described further in Attachment A-1, and the **Subject Phone**, described further in Attachment A-2, contain evidence and instrumentalities of violations of the **Subject Offense**.

## IV.   SEARCH PROCEDURE RELATED TO THE SUBJECT ACCOUNT

38.    In order to facilitate seizure by law enforcement of the records and information described in Attachment A-1, this affidavit and application for search warrant seek authorization, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to permit employees of Apple Inc. to assist agents in the execution of this warrant. In executing this warrant, the following procedures will be implemented:

      a.     The search warrant will be presented to Apple Inc. personnel who will be directed to the information described in Section II of Attachment A-1;

b.     In order to minimize any disruption of computer service to innocent third parties, Apple Inc. employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II of Attachment A-1, including an exact duplicate of all information stored in the computer accounts and files described therein;

39.     Apple Inc. employees will provide the exact duplicate in electronic form of the information described in Section II of the Attachment A-1 and all information stored in those accounts and files to the agent who serves this search warrant; and

40.     Following the protocol set out in the Addendum to Attachment A-1, law enforcement personnel will thereafter review all information and records received from Apple Inc. employees to locate the information to be seized by law enforcement personnel pursuant to Section III of Attachment A-1, as limited, if needed by Attachment C which sets forth the handling of potentially privileged material found in the account, if any.

## V.     SPECIFICS REGARDING SEARCHES OF ELECTRONIC STORAGE MEDIA, INCLUDING THE SUBJECT PHONE

41.     Based upon my training and experience, and the training and experience of specially trained personnel whom I have consulted, searches of evidence from electronic storage media commonly require agents to download or copy information from the electronic storage media and their components, or remove most or all electronic storage media items (*e.g.* computer hardware, computer software, computer-related documentation, and cellular telephones) to be processed later by a

24

qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a.      Electronic storage media can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b.      Searching electronic storage media for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of an electronic storage media system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since electronic storage media evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

42.      In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications

25

software which may have been used to create the data (whether stored on hard disk drives or on external media).

43.    In addition, electronic storage media such as a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s) and are subject to seizure as such if they contain contraband or were used to carry out criminal activity.

## VI.    PROCEDURES TO BE FOLLOWED IN SEARCHING ELECTRONIC STORAGE MEDIA

44.    Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant will authorize the removal of electronic storage media and copying of electronically stored information found in the **Subject Phone** described in Attachment A-2 so that it may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol.

45.    The review of electronically stored information and electronic storage media removed from the **Subject Phone** described in Attachment A-2 may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures if those procedures are designed to minimize the review of information not within the list of items to be seized as set forth in Attachment B:

a.    examination of categories of data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b.     searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B;

c.     surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

d.     opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B;

e.      using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment B; and

f.     using the protocol, if needed, set forth in Attachment C which provides for the handling of potentially privileged material found in the list of items to be seized as set forth in Attachment B, if any.

46.     The government will return any electronic storage media removed from the **Subject Phone** described in A-2 within 60 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

## VII.   CONCLUSION

47.     Based on the above information, I respectfully submit that there is probable cause to believe that evidence and instrumentalities of violations of the **Subject Offense** are located within one or more computers and/or servers found at

Apple Inc., headquartered at One Apple Park Way, Cupertino, CA 95014-2084. By this affidavit and application, I request that the Court issue a search warrant directed to Apple Inc. allowing agents to seize the electronic evidence and other information stored on the Apple Inc. servers following the search procedure described in Attachment A-1, the Addendum to Attachment A-1, and as limited by the protocol set forth in Attachment C, if need be.

48.    Further, based on the above information, I respectfully submit that there is probable cause to believe that evidence and instrumentalities of violations of the **Subject Offense** will be found in the **Subject Phone**, as further described in Attachment A-2. I therefore request a warrant authorizing the seizure of the items described in Attachment B, pursuant to the protocol described in the addendum to Attachment B, and as limited by the protocol set forth in Attachment C, if need be.

FURTHER AFFIANT SAYETH NOT.

s/ Mallary R. Gargano (with permission BWJ)

Mallary R. Gargano
Special Agent
Federal Bureau of Investigation

Sworn to and affirmed by telephone 6th day of May, 2025

Honorable BETH W. JANTZ
United States Magistrate Judge

## ATTACHMENT A-1

### I.  SEARCH PROCEDURE

1.      The search warrant will be presented to Apple Inc. personnel, who will be directed to isolate those accounts and files described in Section II below.

2.      In order to minimize any disruption of computer service to innocent third parties, company employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein.

3.      Apple Inc. employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant.

4.      Following the protocol set out in the Addendum to this Attachment, law enforcement personnel will thereafter review information and records received from company employees to locate the information to be seized by law enforcement personnel specified in Section III below.

### II.  FILES AND ACCOUNTS TO BE COPIED BY EMPLOYEES OF APPLE INC.

To the extent that the information described below in Section III is within the possession, custody, or control of Apple Inc., which are stored at premises owned, maintained, controlled, or operated by Apple Inc., headquartered at One Apple Park Way, Cupertino, CA 95014-2084, Apple Inc. is required to disclose the following

information to the government for the following account, for the time period from August 2023 to April 17, 2025:

**tree071230@icloud.com**

      a.    All available account contents from July 2023 to April 17, 2025, including e-mails, attachments thereto, drafts, contact lists, address books, and search history, stored and presently contained in, or maintained pursuant to law enforcement request to preserve.

      b.    All electronic files stored and presently contained in, or on behalf of the account described above.

      c.    All search history records stored and presently contained in, or on behalf of the account described above including, if applicable, web and application activity history (including search terms), device information history, and location history.

      d.    All existing printouts from original storage of all the electronic mail described above.

      e.    All transactional information of all activity of the electronic mail addresses and/or individual account described above, including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations.

      f.    All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described above, including applications, subscribers' full names, all screen names associated

with the subscribers and/or accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, and detailed billing and payment records.

g.      All records indicating the services available to subscribers of the electronic mail addresses and/or individual account described above.

h.      All account contents previously preserved by Apple Inc., in electronic or printed form, including all e-mail, including attachments thereto, and for the account described above.

Pursuant to 18 U.S.C. § 2703(d), the service provider is hereby ordered to disclose the above information to the government within 14 days of the signing of this warrant.

## III.    Information to be Seized by Law Enforcement Personnel

All information described above in Section II that constitutes evidence and instrumentalities concerning violations of Title 18, United States Code, Section 912, as follows:

1.      Items related to the identity of the user or users of the **Subject Account**.

2.      Items related to the physical location of the users of the **Subject Account** on the following dates: February 9, 25, 26, 27 and March 12, 15, 20, 21, 22, 23, 2025.

3.      Items related to the identities and contact information of participants in or witnesses to the **Subject Offense**.

4.      Evidence indicating how and when the **Subject Account** was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to **Subject Offense** and to the **Subject Account's** account owner.

5.      Evidence of original and/or falsified communications between LIM and/or his family members and the federal agents and government attorneys involved in his underlying healthcare fraud case.

6.      Evidence of original and/or falsified communications between LIM and his attorneys (Joshua Lowther and his associates) involved in his underlying healthcare fraud case.

7.      The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s)on the following dates: February 9, 25, 26, 27 and March 12, 15, 20, 21, 22, 23, 2025.

8.      All of the non-content records described above in Section II.

## ADDENDUM TO ATTACHMENT A-1

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant requires the recipient of the warrant to copy and produce the contents of an electronic account so that they may be reviewed in a secure environment for information consistent with the warrant.

The account provider shall provide the government only data that fall within the criteria as described in Attachment A(II), which may either be the entire contents of an account or only a subset of an account.

The government's review of the data shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate only those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment A(III).

The review of electronically stored information contained in the account described in Attachment A may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures that minimize the review of information not within the list of items to be seized as set forth in Attachment A(III):

a. examination of categories of data contained in the account to determine whether that data falls within the items to be seized as set forth in Attachment A(III);

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment A(III);

c. surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment A(III);

d. opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment A(III); and

e. using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment A(III).

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment A(III). To the extent that materials produced by the account provider pursuant to this search warrant contain evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that same data or other item if it also contains evidence of crimes within the scope of this warrant.

6

**ATTACHMENT C**

**SEARCH PROCEDURES FOR**
**HANDLING POTENTIALLY PRIVILEGED INFORMATION**

1.      During the search, the following procedures will be followed.

2.      These procedures will be executed by: (a) law enforcement personnel conducting the investigation and search and other individuals assisting law enforcement personnel in the search, including any prosecutor participating in the investigation (the "Search Team") and (b) a filter team, members of which are not and will not become part of the prosecution team.

33.      Prior to the Search Team's review of the material identified in Attachment A, a filter team will segregate out categories of potentially privileged documents by searching for communications by or with a known attorney and removing those materials from the collection of materials to be reviewed by the Search Team.

44.      In addition, if, during its review of the material identified in Attachment A, the Search Team determines that a document appears to contain potentially privileged material, the Search Team will discontinue its review; will notify the filter team; and the data that may contain potentially privileged material will be transferred to the filter team and removed from the set of materials accessible to the Search Team.

55.      The filter team may review the data containing potentially privileged material. If the filter team determines that the data does not contain potentially privileged material, the document may be returned to the Search Team. If the filter

team determines that material is potentially privileged, the filter team may do any of the following: (a) apply ex parte to the court for a determination, in its discretion, whether or not the material contains privileged information; (b) defer seeking court intervention and instead maintain the material in a manner that is segregated from and inaccessible to the search team; or (c) disclose the material to the potential privilege holder, request a privilege log if the potential privilege holder asserts privilege, and seek a ruling from the court, in its discretion, regarding the material if the parties cannot reach agreement.